**Joe W. SMITH, et al.,**
**Plaintiffs/Appellants,**

v.

**Naomi Lee CRITES, et al.,**
**Defendants/Respondents.**

**Nos. 56003, 56004.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 12, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Albert C. Lowes, Michael H. Maguire, Lowes & Drusch, Cape Girardeau, Mo., for plaintiffs-appellants.

Thomas A. Ludwig, Buerkle, Beeson & Ludwig, Jackson, for defendants-respondents.

HAMILTON, Judge.

Appellants, six of the seven children of decedent Ada B. Smith,[1] appeal the judgment entered in their suit to quiet title and for partition filed against their sibling, Naomi Lee Crites, her daughter and grandson, Vanita Lee Crites and Elijah Jo Crites, and in their will contest filed against Naomi Lee Crites. The trial court had consolidated the two suits prior to trial. We affirm.

On January 21, 1939, Roy and Rika Smith transferred the property at issue by these words: "To W.C. Smith and Ada B. Smith and the bodily heirs of W.C. Smith." On June 20, 1955, the children of W.C. Smith and Ada B. Smith executed a quitclaim deed transferring the property to their parents, W.C. Smith and Ada B. Smith. W.C. Smith died in 1981.[2]

On or about October 30, 1984, Ada Smith consulted an attorney, Peter Statler, regarding the execution of a deed. While at his office, Ada Smith executed a deed transferring her interest in the property at issue from herself to herself and her daughters, Irma Williams and Naomi Crites, as joint tenants with the right of survivorship. Additionally, in late 1984, Naomi Crites and her daughter Vanita Lee Crites moved into Ada Smith's house to reside with her.

On or about August 27, 1986, Ada Smith executed a will in which she bequeathed her residuary estate to her granddaughter, Vanita Lee Crites. In the event Vanita Lee Crites predeceased her, Ada Smith left the residuary estate to Vanita Crites' son, Elijah Jo Crites.

---

1. Joe W. Smith, Alice S. Statler, Doris Jean Seabaugh, Thelma M. Himmelsbach, Mary Lou Marshall, and Irma D. Williams.

2. W.C. Smith neither conceived nor was survived by any bodily heir other than those who signed the deed of June 20, 1955.

Ada Smith died on December 26, 1986. Following their mother's funeral, Appellants attempted to speak with Naomi Crites about the deed of October 30, 1984. Appellants thought the property should have been divided into sevenths, one part for each sibling, as they believed their parents had intended. When Naomi Crites refused to discuss the deed, Appellants instituted this litigation.

Following a bench trial, the trial court ruled against Appellants, upholding both the deed of October 30, 1984, and the will of August 27, 1986, each executed by Ada B. Smith.

On appeal, Appellants assert the trial court erred (1) in ruling the quitclaim deed of June 20, 1955, transferred their entire interest in the disputed property; (2) in determining the deed of October 30, 1984, was not the product of undue influence; (3) in finding their actions were barred by the doctrine of laches; (4) in finding Naomi Lee Crites was a guest of Ada Smith from 1984 to the latter's death in 1986 and Irma Williams approved of this arrangement; (5) in declaring the will of August 27, 1986, was not the product of fraud or undue influence; and (6) in finding that Ada Smith had testamentary capacity.

Appellants first contend the quitclaim deed of June 20, 1955, failed to destroy the fee tail created by the 1939 conveyance of the property from Roy and Rika Smith to W.C. and Ada Smith. The 1955 deed, they assert, passed only the interest that the siblings had at the time of its execution in 1955; it failed to pass their future fee simple interest in the property. We disagree.

W.C. and Ada Smith received the disputed property by warranty deed in 1939. That deed conveyed the property "[t]o W.C. Smith and Ada B. Smith and the bodily heirs of W.C. Smith." At common law, the foregoing language created a fee tail. *Davidson v. Davidson*, 350 Mo. 639, 642, 167 S.W.2d 641, 642 (1943). Pursuant to Section 442.470 RSMo., however, it creates a life estate in the first takers with the remainder thereafter passing in fee simple absolute to the heirs.

■ A contingent remainder is, moreover, an interest in land that may be conveyed by deed. Section 442.020 RSMo. 1986; *McNeal v. Bonnel*, 412 S.W.2d 167, 169 (Mo.1967). Although a quitclaim deed transfers and is designed to transfer only such title and interest as a grantor had when he delivered the deed, it does pass any interest subsequently acquired by the grantor if an intent to convey that interest is disclosed by the instrument. *Ott v. Pickard*, 361 Mo. 823, 826, 237 S.W.2d 109, 111 (1951).

■ In the case at bar, the 1955 quitclaim instrument provided that neither the children of W.C. and Ada Smith "nor their heirs, nor any other person or persons for them or in their names or behalf, shall or will hereinafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and everyone of them shall by these presents, be excluded and forever barred." The trial court correctly found that the quitclaim deed disclosed on its face an intent to forever convey any interest in the property, thus conveying any future interest in the property.

Appellants next assert the trial court erred in its determination that the deed of 1984 was valid and not the product of undue influence exerted by Naomi Crites. By that deed, Ada Smith conveyed all of her real estate to "Ada Smith, Irma D. Williams, and Naomi Lee Crites as joint tenants with the right of survivorship."

■ Undue influence is that influence which by force, coercion or overpersuasion destroys the free agency of the benefactor. *Estate of Brown v. Fulp*, 718 S.W.2d 588, 596 (Mo.App.1986). A presumption of undue influence arises when evidence demonstrates the benefactor and beneficiary were in a relationship of confidence and trust and when the evidence further discloses facts from which the exercise of undue influence may be inferred, apart from facts showing a confidential relationship. *Id.* at 595. Thus, the exercise of undue influence is a factual determination. *Id.* at 596. We must, therefore, defer to the trial court's findings of fact when supported by sub-

stantial evidence and its opportunity to assess the credibility of witnesses. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The trial court found that Naomi Crites was primarily responsible for the household and personal care of Ada Smith, although other children helped her, and that Appellant Alice Statler handled Ada Smith's checkbook and assisted with her business affairs. Ample evidence in the record supported these findings. For example, Alice Statler testified that she paid her mother's bills and handled her checkbook from 1981 to 1985.

The trial court's findings demonstrate that Appellants failed to prove a confidential relationship existed between Naomi Crites and Ada Smith. Such a relationship exists when one person relies upon and trusts the other to manage and handle his property and business affairs, thus creating some fiduciary obligation. *Davis v. Pitti*, 472 S.W.2d 382, 387 (Mo.1971). A mere showing of blood ties or family connection as the record here discloses, is insufficient to prove a confidential relationship. *Mahler v. Tieman*, 550 S.W.2d 623, 628 (Mo.App.1977). Because Appellants have failed to prove a confidential relationship, they failed to demonstrate the exercise of undue influence on the part of Naomi Crites. Their second point is denied.

In the third point on appeal, Appellants contend the trial court erred in concluding that the doctrine of laches barred their claims regarding the deed. Having previously determined that the trial court correctly decided Appellants had no interest in the disputed property, we need not address the issue of laches. An appellate court opinion should be limited to questions essential to the proper disposition of the appeal. *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 670 S.W.2d 895, 899 (Mo.App.1984).

Appellants next assert that the trial court erred in finding that Naomi Crites was a guest of Ada Smith from 1984 to the latter's death in 1986 and Appellant Irma Williams approved of this arrangement. In

its findings, the trial court ordered Naomi Crites to pay rent to Irma Williams for occupancy of the property for twenty-six months following Ada Smith's death. In this point, Appellants contend Naomi Crites should have paid rent beginning in or about October, 1984, when she initially moved into her mother's house. Appellants fail, however, either to cite relevant law to support this contention or to explain their failure to do so. We are, therefore, under no obligation to consider it further. *Brown v. City of St. Charles*, 643 S.W.2d 645, 646 (Mo.App.1982).

In their fifth point, Appellants contend the trial court erred in declaring Ada Smith's will of August 27, 1986, valid and not the product of undue influence by Naomi Crites. Not all influence, of course, is undue influence. *Watson v. Warren*, 751 S.W.2d 406, 408 (Mo.App.1988). To prove undue influence over a testator, the exerted influence must be of sufficient strength to destroy the free agency of the testator when the will is made so that the will is not the testator's own will but is that of the party exercising the influence. *Rhoades v. Chambers*, 759 S.W.2d 398, 402 (Mo.App.1988). In a testamentary context, a presumption of undue influence will arise when: (1) a confidential or fiduciary relationship exists between the testator and a beneficiary; (2) the beneficiary will receive a substantial benefit under the will; and (3) the beneficiary caused or assisted in causing the execution of the will. *Disbrow v. Boehmer*, 711 S.W.2d 917, 925 (Mo.App. 1986).

Ada Smith's will of August 27, 1986, designated Naomi Crites the personal representative, not a beneficiary. As personal representative, she was to pay the bills of the estate. The designation of an individual as personal representative fails to render that person a beneficiary under the will so as to permit an inference of undue influence. *Baker v. Spears*, 357 Mo. 601, 613, 210 S.W.2d 13, 19 (1948). Therefore, Appellants' fifth point must fail.

In their final point, Appellants contend the trial court erred in finding that Ada Smith possessed testamentary capaci-

ty at the time she executed the will of August 27, 1986. To have testamentary capacity, a testator, at or near the time his will is executed, must (1) be of sound mind; (2) understand the ordinary affairs of life; (3) know the nature and extent of his property; (4) know the persons who are the natural objects of his bounty; and (5) appreciate his natural obligations to those persons. *Mangan v. Mangan,* 554 S.W.2d 418, 420 (Mo.App.1977).

In support of their position, Appellants rely upon their evidence, which, if believed, demonstrated that Ada Smith lacked testamentary capacity. The record, however, also contains evidence that Ada Smith was fully cognizant of her actions when she executed her will. In particular, her attorney, William Syler, testified in detail about her capacity to make a will. We cannot hold that the trial court erred in believing that testimony. A trial court, sitting as the trier of fact, is entitled to believe all, part, or none of the testimony of any witness. *Estate of Johnson v. Lamburth,* 719 S.W.2d 55, 59 (Mo.App. 1986). Point denied.

The judgment of the trial court is affirmed.

SIMON, C.J., and CRIST, J., concur.